UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DONALD RAY VIOLETT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:19-CV-P524-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| DANIEL KING *et al.*, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion for summary judgment filed by Defendants Daniel King, Anna Valentine, and Jeffrey Hope [R. 17]. Proceeding *pro se*, Plaintiff filed a response to the motion [R. 19]. Defendants did not file a reply. For the reasons that follow, the motion for summary judgment will be denied.

## I. SUMMARY OF ALLEGATIONS SURVIVING INITIAL REVIEW

Plaintiff is an inmate at the Kentucky State Reformatory (KSR). Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's retaliation claims to proceed against Defendants King, Valentine, and Hope in their individual capacities and dismissed all other claims. [R. 12].

In the verified complaint, Plaintiff stated that on March 7, 2019, while he was housed in KSR's Disabled Living Unit, he "was changing clothes at his bed when . . . [a KSR corrections officer] viewed Plaintiff." [R. 1]. He asserted that he filed a Prison Rape Elimination Act (PREA) grievance which was delivered to Defendant King and a deputy warden. [*Id.*] He stated, "Defendant King done another cover up of Plaintiff's PREA grievance and, on March 13, 2019 Defendant King had Defendant Hope issue Disciplinary Report No. KSR-2019-00557 in

retaliation for Plaintiff filing Grievance No. 19-0177, charging Plaintiff with being nude in his bed area."[*Id.*]

Plaintiff asserted that on May 10, 2019, he received a letter from the Kentucky Department of Corrections (KDOC) ombudsman stating that his "Grievance No. 19-0177 would be reinstated after it was determined Defendant King had done a cover up of Plaintiff's PREA grievance." [*Id.*] He stated that Defendants Valentine and King had refused to process his PREA grievance. [*Id.*] He further asserted that Defendant King "issued Disciplinary Report No. KRS-2019-00626, through retaliation, charging Plaintiff with obtaining services under false pretenses." [*Id.*] He maintained that he was found guilty of both disciplinary reports "after Defendant Valentine refused to permit Plaintiff to question Defendant King about the Disciplinary Reports or permit Plaintiff right to receive answers from Defendant King, in written questions Plaintiff submitted under Rules of Discovery." [*Id.*]

Plaintiff further stated that Defendants King and Valentine had further retaliated against him "after Plaintiff complained to John Till[e]y, Justice Secretary for the [KDOC] that [Disabled Living Unit] bathroom did not meet PREA, ADA, and ACA standards and requirements for handicap inmates." [*Id.*] He asserted that Defendants King and Valentine "had Plaintiff found guilty of the Disciplinary Reports." [*Id.*] He stated that he lost his prison job "because Plaintiff complained about the PREA, ADA, and ACA violations in the [Disabled Living Unit] bathroom." [*Id.*]

In the Memorandum Opinion and Order allowing Plaintiff's retaliation claims to proceed past initial review, the Court summarized Plaintiff's allegations as follows: that Defendants King and Hope issued Disciplinary Report No. KSR-2019-00557 in retaliation for filing a grievance; that Defendant King "issued Disciplinary Report No. KRS-2019-00626, through retaliation,

charging Plaintiff with obtaining services under false pretenses"; and that Defendants King and Valentine had him found guilty of disciplinary reports and caused him to lose his prison job in retaliation for him "complain[ing] to John Till[e]y, Justice Secretary for the [KDOC] that [Disabled Living Unit] bathroom did not meet PREA, ADA, and ACA standards and requirements for handicap inmates." [R. 12].

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id*.  Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*.  If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In a case such as this one where "the defendants in prisoner civil rights litigation [have] move[d] for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citations omitted).

### III.  ANALYSIS

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust all available administrative remedies before commencing an action with respect to prison conditions. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).  However, an inmate need only exhaust those remedies that are actually "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016).

Requiring exhaustion serves two purposes.  First, it gives an agency "'an opportunity to correct its own mistakes with respect to the program it administers before it is haled into federal court,'" and it discourages "'disregard of [the agency's] procedures.'" *Woodford v. Ngo*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).  Second, exhaustion promotes efficiency. *Id*.  This is because "[c]laims generally can be resolved much more quickly

and economically in proceedings before an agency than in litigation in federal court." *Id*. The Sixth Circuit "requires an inmate to make affirmative efforts to comply with the administrative procedures" and analyzes "whether those efforts to exhaust were sufficient under the circumstances." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citing *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (internal quotation marks and citation omitted)). Generally, internal exhaustion requires an inmate to state his grievance with sufficient particularity so as "to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (quotations omitted).

The KDOC Inmate Grievance Procedure, CPP 14.6, which Defendants attach to their motion, provides that if an inmate wishes to file a grievance, he must do so in writing, and the grievance must include "all aspects of the issue and identify all individuals . . . so that problems concerning the issue or individuals may be dealt with . . . ." [R. 17-3, CPP 14.6, ¶ II(J)(1) (a)(5)]. A grievance may either be rejected or permitted to move on to the informal resolution stage. [*Id.*, ¶ II(J)(1)]. An inmate may not "retrieve an issue that has been personally grieved within the past six (6) months." [*Id.*, ¶ II(E)(1)]. The Inmate Grievance Procedure also includes a list of twelve non-grievable issues [*Id.*, ¶ II(C)]. While there is a multi-step appeals process for grievances that move on to the informal resolution stage, there is no appeals process for grievances that are rejected as "non-grievable." [*Id.*]

Defendants argue that they are entitled to summary judgment because Plaintiff failed to file grievances related to his retaliation claims before filing his complaint. [R. 17]. They attach the affidavit of Jamie Huff, who states that he is an Administrative Specialist III at KSR and, in

5

that capacity, is the custodian of grievances maintained at KSR. [R. 17-3]. He avers that he has reviewed the original records for the grievances filed by Plaintiff to determine if he filed a grievance regarding Defendants Valentine, Hope, or King during the time frame from April 1, 2017, to January 23, 2020. [*Id.*] Huff states that he determined that Plaintiff filed one grievance during that time which named Defendants Mann, Hope, and King. [*Id.*]

The grievance, grievance number 19-0177, was dated March 7, 2019. [*Id.*] Defendants attach the grievance, which states, under a heading asking for a brief statement of the problem, as follows:

> 3-7-19 while trying to change my disposable pull-up underwear I noticed CO Mann #397 watched me for 20-30 seconds. She remarked you are not to be nude in your bed area. I tried to explain I was changing my pull-up underwear. I asked to speak to Daniel King and she refused. Cpt. Hope told me to stay covered up and I tried to explain medical has told me to change at my bed area as bathroom stables are too small for wheelchair and me to change in there. I do not like unwanted sexual harassment.

[R. 17-4]. Under a heading asking for the action requested, Plaintiff stated, "Please investigate as Daniel King took a no-do approach." [*Id.*]

Huff states in his affidavit, "According to the grievance records, Grievance 19-0177 was 'closed-active investigation.'" [R. 17-3]. Huff further avers that this grievance was the only grievance Plaintiff filed naming Defendants Hope, King, or Mann from April 1, 2017, until January 23, 2020. [*Id.*] He states, "I found no grievances grieving any actions by Anna Valentine in this time frame. There were no grievances from April 1, 2017 until January 23, 2020 which grieved alleged retaliation or similar conduct by Anna Valentine, Jeffrey Hope, or Deanna Mann." [*Id.*]

Thus, Defendants argue that Plaintiff did not file any grievance regarding alleged retaliation by Defendants prior to filing this action. [R. 17]. They maintain that they are

therefore entitled to summary judgment based on Plaintiff's failure to exhaust available administrative remedies. [*Id.*]

In an unverified response to the motion, Plaintiff states, "CPP 14.6 II-C-4 dictates a prisoner cannot challenge a disciplinary report; decision in a grievance. This would include Valentine's appeal decision. Plaintiff was suspended from his work assignment because of the disciplinary report and decisions. CPP 14.6 II-C-5 prohibits filing a grievance on a classification decision." [R. 19].[1] Plaintiff further states, "Valentine's policy is if a prisoner files a PREA grievance, staff is to issue a disciplinary report to 'kill' the PREA complaint. Valentine violates DOC policy and procedure to protect her staffs' wrongdoings." [*Id.*] He further states that he wrote a letter to the KDOC commissioner concerning his complaints. [*Id.*] He states, "Complaining to the commissioner about Valentine and King covering up PREA grievances is exhausting Plaintiff administrative remedies." [*Id.*]

Turning to the KDOC Inmate Grievance Procedure, CPP 14.6, attached to Defendants' summary judgment motion, it sets forth "Non-grievable Issues." [R. 17-2, CPP 14.6, ¶ II(C)]. These include: "Disciplinary procedures, Adjustment Committee decision, Unit Hearing Officer decision, Adjustment Officer decision, or Warden's review of these decisions, incident where the grievant received a disciplinary report and report has been dismissed;" and "Classification decision or appeal of a classification decision including transfer denial, recommendation, or approval." [*Id.*, ¶ II(C) (4)-(5)].

---

[1] In his response, Plaintiff points to additional "retaliatory measures of harassment" by Defendants, including denying him the right to use the prison law library, destroying his grievances, concealing grievances, denying due process in the hearing, and denying medical care. [*Id.*] However, in conducting its initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's retaliation claims to proceed based on his allegations as summarized above. [R. 12]. No retaliation claims based on alleged denial of the use of the law library, destroying or concealing grievances, or denial of due process or medical care survived initial screening, and such claims are not before the Court.

7

An inmate cannot be required to exhaust administrative remedies regarding non-grievable issues. *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004) (holding that an inmate "cannot be required to exhaust administrative remedies regarding non-grievable issues"). "The non-grievability of [a claim] through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim." *Owens v. Keeling*, 461 F.3d at 769 (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Rancher v. Franklin Cty., Ky.*, 122 F. App'x 240, 242 (6th Cir. 2005)).

Defendants did not file a reply to Plaintiff's response. Therefore, they present no evidence or argument to dispute Plaintiff's assertion, supported by the KDOC Inmate Grievance Procedure, that the alleged retaliatory actions taken against Plaintiff, *i.e.*, a disciplinary report and disciplinary convictions against Plaintiff and a resulting job termination, were not grievable under the KDOC grievance procedures. "Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure." *Reeves v. Hobbs*, 6:11-cv-06047, 2013 U.S. Dist. LEXIS 140698, at *15 (W.D. Ark. Sept. 3, 2013); *see also White v. Jindal*, No. 13-CV-15073, 2014 U.S. Dist. LEXIS 86515, at *19 (E.D. Mich. May 7, 2014) ("Defendant cannot now assert that Plaintiff failed to exhaust the grievance process after being told that his issues were nongrievable."), *report and recommendation adopted by*, 2014 U.S. Dist. LEXIS 85506 (E.D. Mich. June 24, 2014).

Moreover, the Court finds that Plaintiff made "affirmative efforts" to allow prison officials to address his allegations of retaliation. *See Risher v. Lappin*, 639 F.3d at 240. Plaintiff attached to his complaint an undated letter he wrote to John Tilley, the Secretary of the Kentucky

8

Justice and Public Safety Cabinet, in which he stated, "Anna Valentine and Daniel King are covering up PREA grievances filed by KSR inmates that involved sexual harassment toward inmates." [R. 1-2]. He also states, "King intimidates and harass inmates, who files a PREA grievance, by having frivolous disciplinary reports issued against inmates and then has the Adjustment Hearing Officer find the inmate guilty and then issue another disciplinary reports against the inmate saying you lied on staff in your PREA grievance." [*Id.*] Moreover, in the Disciplinary Report Form dated March 7, 2019, attached to the complaint, the Report of the Investigating Officer noted that when the Disciplinary Report was read to Plaintiff, he stated that he felt that "this is retaliation for filing a PREA complaint towards the DOC." [*Id.*]

Upon review, the Court finds that Plaintiff has shown a genuine issue of material fact with regard to exhaustion. Therefore, the Court finds that Defendants have failed to show that they are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, the Court **ORDERS** that Defendants' Motion for Summary Judgment [**R. 17**] is **DENIED**.

This the 29th day of September, 2020.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Plaintiff, *pro se*
 Counsel of record
A958.010

9