UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DONALD RAY VIOLETT ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:19-CV-524-CHB |
| ) | |
| v. ) | |
| ) | |
| DANIEL KING *et al.* ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion for Summary Judgment by Defendants Daniel King, Anna Valentine, and Jeffrey Hope. [R. 72]. Plaintiff Donald Ray Violett, acting *pro se*, responded [R. 73], and Defendants replied [R. 74]. Also before the Court is a Motion for Summary Judgment filed by Plaintiff. [R. 75]. Defendants responded [R. 76], and in lieu of a reply, Plaintiff filed a Motion to Submit a Document. [R. 79]. These matters are ripe for review. For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment, grant Plaintiff's Motion to Submit a Document, and deny Plaintiff's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff Donald Ray Violett filed this *pro se* 42 U.S.C. § 1983 suit on July 9, 2019. Plaintiff is an inmate at the Kentucky State Reformatory ("KSR"). Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's retaliation claims to proceed against Defendants King, Valentine, and Hope in their individual capacities and dismissed all other claims. [R. 12]. Defendant King is a Correctional Unit Administrator at KSR and also serves as the Prison Rape Elimination Act ("PREA") compliance manager. [R. 72-4]. Defendant Valentine is the Warden of KSR. [R. 72-11]. Defendant Hope is also a Correctional Unit

Administrator at KSR and, at the time of the alleged retaliatory activity, was a shift captain. [R. 72-10].

In his verified complaint, Plaintiff states that on March 7, 2019, while he was housed in KSR's Disabled Living Unit, he "was changing clothes at his bed when . . . [a KSR corrections officer] viewed Plaintiff." [R. 1, p. 4]. He filed a PREA Grievance No. 2019-0177 which was delivered to King and a deputy warden. *Id.* Plaintiff alleges "Defendant King done another cover up of Plaintiff's PREA grievance and, on March 13, 2019[,] Defendant King had Defendant Hope issue Disciplinary Report KSR No. 2019-557 in retaliation for Plaintiff filing Grievance No. 19-0177, charging Plaintiff with being nude in his bed area." *Id.*

Plaintiff contends Valentine and King refused to process his PREA grievance. *Id.* On May 10, 2019, Plaintiff received a letter from John Dunn, Kentucky Department of Corrections ("KDOC") ombudsman, stating that "after consultation with the facility your PREA grievance will be reinstated and allowed to advance through the process." [R. 1-2, p. 8]. Plaintiff further alleges that King "issued another Disciplinary Report KSR No. 2019-626, through retaliation, charging Plaintiff with obtaining services under false pretenses." [R. 1, p. 4]. The record reflects that King filed that disciplinary report on March 13, 2019, after receiving the final report from the PREA investigator. [R. 72-7, p. 1].

Plaintiff additionally alleges that King and Valentine retaliated against him "after Plaintiff complained to John Till[e]y, Justice Secretary for the [KDOC] that [Disabled Living Unit] bathroom did not meet PREA, ADA, and ACA standards and requirements for handicap inmates." [R. 1, p. 4]. He asserts that King and Valentine "had Plaintiff found guilty of the Disciplinary Reports." *Id.* Plaintiff claims he lost his prison job "because Plaintiff complained about the PREA, ADA, and ACA violations in the [Disabled Living Unit] bathroom." *Id.*

Based on these allegations, Plaintiff claims he suffered the following retaliatory acts: (1) King and Hope issued Disciplinary Report KSR No. 2019-557 in retaliation for Plaintiff filing a grievance; (2) King issued Disciplinary Report KSR No. 2019-626 in retaliation for Plaintiff filing a grievance; and (3) King and Valentine found Plaintiff guilty of disciplinary reports and caused him to lose his prison job in retaliation for him complaining to John Tilley, Secretary of the Justice and Public Safety Cabinet for the KDOC, that the Disabled Living Unit bathrooms did not meet PREA, Americans with Disabilities Act ("ADA"), and Affordable Care Act ("ACA") standards and requirements for handicap inmates. [R. 1]; [R. 12].

The parties have now filed cross-motions for summary judgment. [R. 72]; [R. 75]. Fully briefed, they are ripe for consideration.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge its burden by demonstrating the absence of evidence to support an essential element of the nonmoving party's case. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* Ultimately, if the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

Plaintiff's *pro se* status does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); *see also Carr v. Metro Gov't*, No. 3:19-CV-P449-CHB, 2022 WL 4686993, at *3–4 (W.D. Ky. Sept. 30, 2022).

### III. ANALYSIS

To state a First Amendment retaliation claim, a plaintiff must prove three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . .

the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012). If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'" *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

### A. Retaliation Claim against King and Hope: Disciplinary Report KSR No. 2019-557

Plaintiff alleges that King and Hope issued Disciplinary Report KSR No. 2019-557 in retaliation for Plaintiff filing PREA Grievance No. 2019-0177.

As discussed above, on March 7, 2019, Plaintiff received Disciplinary Report KSR No. 2019-557 for indecent exposure. [R. 72-2]. The record reflects that the incident occurred at 2:05 a.m. on March 7, 2019. According to the disciplinary report:

> On 3/7/2019 at approximately 2:05 a.m., I Officer Deanna Mann was making rounds in DAL A-Wing when I came across Inmate Donald Violett . . . sitting on his bed naked with his underwear (pull-ups) down to his ankles. I Officer Mann approached Inmate Violett and asked him what he was doing, Inmate Violett replied "Drinking my coffee[.]" I Officer Mann asked him why he was doing it naked. He then mumbled about getting in touch with Daniel King. I Officer Mann told Inmate Violett to put his clothes on and not to be in the dorm areas naked. Inmate Violett continued to argue. Officer Mann verified with PCM Daniel King that Inmate Violett was told by PCM King he was not to be in the open dorm bedding area in the nude, that if he needed to get undressed to go into the bathroom.
>
> This write up was put into KOMS by Captain Jeffery Hope due to Officer Mann not being listed in KOMS.

*Id.* at 1. The disciplinary action was signed on March 7, 2019, at 4:16:27 a.m. *Id.* At 4:37:37 a.m., Supervisor Sylvester Robinson signed the report. [R. 1-2, p. 5]. KSR Investigator Jeremy Rodriguez read the disciplinary report to Plaintiff on March 13, 2019. [*Id.*; R. 72-2, p. 1]. On March

24, 2019, KSR Adjustment Officer Jordan Keister conducted a hearing on the matter and concluded that Plaintiff was guilty of the offense of indecent exposure, noting Plaintiff "admitted on the record that his pull up was down around his ankles when Officer Mann was conducting her rounds." [*Id*. at 3–4]. Keister further noted that King had previously informed Plaintiff "not to be naked in his open bay." *Id.* Plaintiff appealed the disciplinary action to Valentine, who affirmed the finding of the Adjustment Committee. [*Id.* at 5].

"The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation." *Lawson v. LMDC*, No. 3:16-CV-00728-GNS, 2019 WL 8953354, at *8 (W.D. Ky. Oct. 10, 2019), report and recommendation adopted sub nom., *Lawson v. Louisville Metro Dep't of Corr.*, No. 3:16-CV-00728-GNS, 2020 WL 1166082 (W.D. Ky. Mar. 11, 2020) (citing *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)); *see also Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). As discussed above, the first element of a retaliation claim requires a plaintiff to show that he was engaged in protected conduct. The third element of a retaliation claim requires a plaintiff to prove that the exercise of a protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to establish either element based on the timing of the disciplinary report and the grievance. Plaintiff's complaint alleges that he filed the PREA Grievance No. 2019-0177 against Officer Deanna Mann on March 7, 2019, at 8:37 a.m. for allegedly watching him while he was changing his disposable pull-up underwear. [R. 72-3, pp. 2–3]; [R. 1, p. 4]. The record of the disciplinary action, KSR No. 2019-557, reflects that the disciplinary report was signed at 4:16:27 a.m. on March 7, 2019. [R. 72-2, p. 1]. Thus, Plaintiff's grievance was filed *after* Mann's

disciplinary report. [R. 72-3, pp. 2–3]; [R. 1, p. 4]; *see also* [R. 72-4 ("King Affidavit")].[1] Given the timing of the disciplinary report, neither King nor Hope retaliated against Plaintiff because the disciplinary report was filed before Plaintiff had engaged in what he alleges is protected conduct—filing the PREA Grievance. Likewise, given the timing of the report, Plaintiff's protected right of filing a grievance could not have been a substantial or motivating factor in Defendants' alleged retaliatory conduct of filing the disciplinary report. *See Senay v. Graham*, No. 4:19-CV-P6-JHM, 2019 WL 2717985, at *5 (W.D. Ky. June 28, 2019).

In support of his motion for summary judgment, Plaintiff contends King and Hope's disciplinary report was filed nine days after his PREA grievance. [R. 75]. Plaintiff further asserts that Defendants backdated the incident report to make it appear that it was a disciplinary report issued prior to Plaintiff's PREA grievance. *Id.* These conclusory allegations are unsupported by the record. [R. 1, p. 4]; [R. 72-2]; [R. 72-3]. "'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Vaughn*, 2022 WL 4693908, at *4 (quoting *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009)).

Plaintiff's retaliation claim based on Disciplinary Report KSR No. 2019-557 fails on the first and third element, and as a result, King and Hope are entitled to summary judgment on this claim.

### B. Retaliation Claim against King: Disciplinary Report KSR No. 2019-626

Plaintiff alleges that King issued Disciplinary Report KSR No. 2019-626 in retaliation for

---

[1] Contrary to Plaintiff's argument, parties to motions for summary judgment, such as Defendants, may submit affidavits or declarations to support their motions. Fed. R. Civ. P. 56(c)(4).

Plaintiff filing PREA Grievance No. 2019-0177.

The record reflects that on March 13, 2019, King issued a disciplinary report, KSR No. 2019-626, against Plaintiff for filing the unfounded PREA grievance discussed above. [R. 72-7]. According to the disciplinary report:

> On March 13, 2019 at approximately 3:10pm, PREA Investigator Joshua Schank submitted PREA investigation KSR03112019C to me, PREA Compliance Manager Daniel King for final review. Upon reviewing the information within the investigation, I, PCM King find that Inmate Donald Violett . . . filed the PREA allegation against a female staff member in retaliation for being issued a disciplinary report for a rule violation Inmate Violett has been warned about several times. Due to the evidence indicating the PREA allegation was filed to discredit or minimize the seriousness of his offense in addition to retaliate against the female officer that issued the disciplinary report, I, PCM King find that the allegation was made in bad faith.

*Id.* at 1. A hearing was conducted for this disciplinary report on May 21, 2019, and Plaintiff was found guilty of lying to an employee by filing a false grievance against Officer Mann. *Id.* at 3. On appeal, Valentine concurred with the Adjustment Committee. *Id.* at 5.

As discussed above, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the Sixth Circuit has made clear that it is only protected "if the grievances are not frivolous." *Id.*; *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Violett v. Dowden*, No. 3:17CV-P531-TBR, 2017 WL 5892211, at *6 (W.D. Ky. Nov. 29, 2017) (quoting *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) ("In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'")). "Abusive or manipulative use of a grievance system would not be protected conduct," *King*, 680 F.3d at 699, and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is

retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002); *see also Rouser v. Ward*, No. 1:21-CV-338, 2021 WL 4129211, at *3 (W.D. Mich. Sept. 10, 2021); *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014). "'A [grievance] is frivolous if it lacks an arguable basis either in law or fact.'" *Smith v. White*, No. 5:17-CV-00187-TBR, 2020 WL 113360, at *3 (W.D. Ky. Jan. 9, 2020) (quoting *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).

In the present case, the record demonstrates that Plaintiff filed PREA Grievance No. 2019-0177 against Officer Mann in an effort to impede the disciplinary action she filed earlier against Plaintiff. Investigators who considered Plaintiff's grievance determined it was not made in good faith and was filed because Officer Mann filed a disciplinary report against him. In fact, John Dunn, Ombudsman with the KDOC, advised Plaintiff that "inmates may receive write-ups if their [PREA] allegations are proven to be false." [R. 1-2, p. 8]. "While a prisoner has every right to resolve legitimate disagreements with prison staff through the prison's grievance process, his use of the same process as a weapon against staff members based upon frivolous allegations is not constitutionally-protected conduct which can support a retaliation claim." *Antonelli v. Rios*, No. CIV A 06-283-GFVT, 2009 WL 790171, at *7 (E.D. Ky. Mar. 24, 2009).

Because "[a] grievant may be penalized for filing a meritless grievance," *Jones v. Heyns*, No. 1:12-CV-01341, 2015 WL 4158749, at *3 (W.D. Mich. July 9, 2015), Plaintiff has not shown that he engaged in the protected conduct of filing a non-frivolous grievance. Thus, Plaintiff's retaliation claim based on Disciplinary Report KSR No. 2019-626 fails on the first element, and as a result, King is entitled to summary judgment on this claim.

### C. Retaliation Claim against King and Valentine

Plaintiff alleges King and Valentine found him guilty of both disciplinary reports, Disciplinary Report KSR No. 2019-557 and Disciplinary Report KSR No. 2019-626, and caused

him to lose his prison job in retaliation for Plaintiff's complaint to John Tilley, Secretary of the Justice and Public Safety Cabinet for the KDOC, that the Disabled Living Unit bathrooms did not meet PREA, ADA, and ACA standards or requirements for handicap inmates. [R. 1, p. 4]; [R. 1-2, p. 12]. A letter sent to the Secretary of the Justice and Public Safety Cabinet regarding federal standards for handicapped bathrooms is protected conduct, and any retaliation based on the letter would violate the First Amendment. *See*, *e.g.*, *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), overruled on other grounds, 490 U.S. 401 (1989); *Mincy v. Chmielewski*, No. CIV.A1:05-CV-0292, 2007 WL 707344, at *6 (M.D. Pa. Mar. 2, 2007), aff'd sub nom., *Mincy v. Klem*, 277 F. App'x 239 (3d Cir. 2008) ("It also is clear that prisoners retain a constitutionally protected right to reasonable correspondence with the outside world.").

### 1. King

Plaintiff has failed to offer any evidence that King took the adverse action of finding Plaintiff guilty in the disciplinary actions. *See Thaddeus-X*, 175 F.3d at 394. King is not an adjustment officer responsible for finding inmates "guilty" or "not guilty" of disciplinary offenses. [R. 72-4, ¶ 10]. Plaintiff offers no evidence to support his contention that King was an adjustment officer. In fact, the record reflects the actual adjustment officers in Plaintiff's disciplinary actions, and neither is King. [R. 72-2, p. 3]; [R. 72-7, p. 3]. Thus, Plaintiff cannot establish the adverse action element of this retaliation claim against King, and as a result, King is entitled to summary judgment on this claim.

### 2. Valentine

Plaintiff has likewise failed to offer sufficient proof that Plaintiff's letter to Mr. Tilley was a substantial or motivating factor in Valentine's affirmance of the disciplinary decisions. *See Smith*, 250 F.3d at 1037. Plaintiff correctly notes that Valentine reviews inmates' appeals of the

disciplinary decisions of the Adjustment Officer/Committee. [R. 72-11, ¶ 2]. Consistent with her responsibility as warden, it is undisputed that she performed such a review with respect to Plaintiff's disciplinary actions. [R. 72-2, p. 5]; [R. 72-7, p. 5]. However, Valentine submitted an affidavit stating that she was not aware Plaintiff had written to John Tilley regarding the disabled living bathrooms until this lawsuit was filed. [R. 72-11, ¶ 3]. Plaintiff maintains in his verified amended complaint that Valentine retaliated against Plaintiff after "Plaintiff complained to John Tilly . . . that DAL bathroom did not meet PREA, ADA, and ACA standards." [R. 1, p. 4]. In doing so, Plaintiff implies Valentine knew of the letter. While statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, they must be based on personal knowledge. *Weberg*, 229 F.3d at 526 n.13. Plaintiff offers no basis to conclude he had personal knowledge that Valentine knew of his letter to Tilley. *See Castillo v. Maguire*, 3:13-CV-2953, 2022 WL 1122836, at *3 (M.D. Pa. Apr. 14, 2022) (finding on summary judgment the court "is not required to consider the portions of Plaintiff's verified complaint that are speculative and not based on personal knowledge or supported by any record evidence").

Additionally, Plaintiff offers no other evidence—such as affidavits, depositions, answers to interrogatories, or statements made in his verified complaint—to counter Valentine's affidavit. "Even if contradictory evidence were on the record, it is Plaintiff's burden to identify it." *Eddins v. Powell*, No. 5:17-CV-40-TBR, 2019 WL 1982446, at *3 (W.D. Ky. May 2, 2019) (citing *Rutherford v. Lake Michigan Contractors, Inc.*, 28 F. App'x 395, 399–400 (6th Cir. 2001) ("The nonmoving party has the burden of directing the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.")). Because Plaintiff fails to identify any such evidence, Valentine is entitled to summary judgment on this claim.

### 3. Prison Job

Plaintiff submits that King and Valentine removed him from his job as a legal aide in retaliation for writing a letter to Mr. Tilley, but he has failed to offer any evidence or facts to support this allegation. The record reflects that Plaintiff last served as a legal aide in 2016, before the 2019 disciplinary reports were issued against him. [R. 79-1]. Further, Deputy Warden Campbell denied Plaintiff's March 2021 application for a Controlled Work Assignment as a Legal Aide, not King or Valentine. Thus, Plaintiff fails to produce evidence that either Defendant inflicted the adverse action of removing Plaintiff from his legal aide job assignment. As a result, King and Valentine are entitled to summary judgment on this claim.

### D. Plaintiff's Motion to Submit Document

Plaintiff requests to submit into the record a Memorandum to Plaintiff from Valentine dated November 15, 2022, regarding Plaintiff's legal aide position at KSR. [R. 79]; [R. 79-1]. No objection was filed. The Court grants Plaintiff's motion and has considered the document in deciding the cross-motions for summary judgment.

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment [**R. 72**] is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment [**R. 75**] is **DENIED**.

3. Plaintiff's Motion to Submit a Document [**R. 79**] is **GRANTED**.

The Court will enter a separate judgment dismissing the action.

This the 1st day of March, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

cc: Plaintiff, *pro se*
counsel of record